PATRICK POWERS *v.* GRAND TRUNK RAILWAY CO.

January Term, 1906.

Present: ROWELL, C. J., TYLER, MUNSON, WATSON, POWERS, and MILES, JJ.

Opinion filed February 16, 1906.

*Negligence—Railroads—Crossings—Duty of Engineer—Escape of Steam—Frightening Horses.*

In an action against a railroad company for injuries received by being thrown from a wagon on a crossing, in consequence of the horse having become frightened by escaping steam as plaintiff drove by defendant's locomotive which was slowly approaching said crossing, evidence examined and *held* that there is nothing therein tending to show either that the escape of steam was unnecessary, or that the engineer did not see the team as soon as he should, or that he did not stop the engine and the escape of steam as soon as possible after discovering the team, and that, therefore, the court correctly ordered a verdict for defendant.

CASE for negligence. Plea, the general issue. Trial by jury at the March Term, 1905, Essex County, *Haselton,* J., presiding. Verdict directed for the defendant, and judgment thereon. The plaintiff excepted.

*Herbert W. Blake* for the plaintiff.

*L. L. Hight,* and *Harry B. Amey* for the defendant.

MUNSON, J.  The engine of which the plaintiff complains was passing slowly, in a westerly direction, from the turn-table at the round-house in defendant's yard at Island Pond to the first side-track, to be attached to a train.  The road upon which the plaintiff was travelling, tracing it from the east, crossed the track on which the engine was running just west of the round-house, ran close beside the track on the right hand side some over a hundred feet, and then turned directly across it.  The entire length of the track from the turn-table to the second crossing was about three hundred feet.  The wagon in which plaintiff was riding was going in the same direction as the engine, went over the first crossing after the engine had passed, overtook and passed the engine on the section between the two crossings, and was wrecked on the first rail at the further edge of the second crossing; the engine being brought to a stop when it covered about one-quarter of the crossing.  The horse was frightened by escaping steam as it came up with the engine, thereupon hastened its speed despite the efforts of the driver, and came upon the crossing in the manner indicated.  It is claimed that the defendant was negligent in permitting the steam to escape. At the close of all the evidence a verdict was directed for the defendant.  The defendant stands solely upon the ground that there was no evidence tending to show negligence on its part.

The engineer testified that as he approached the crossing he was in his place on the right side of the engine, with his head out of the cab window, and looking forward; that there was an escape of steam from the cylinders; that he did not see the team until it got right under, or a little forward of, his cab window, and that as soon as he saw it he stopped the

engine.   Plaintiff's attorney cross-examined the witness as to when the cylinder cocks were opened and when closed, and there was some confusion in his answers as first given; but on a final cross-examination as to his meaning the witness testified that the cylinder cocks were open from the time he left the turn-table until he saw the team, and that as soon as he saw the team he shut them off, and opened them again after the engine had stopped.

The plaintiff's evidence tended to show that as they were driving past the tender or engine the steam burst out suddenly from the cylinders with a loud noise, and came against the horse.   The boy whom the plaintiff was holding in his lap said this occurred when they got along near the engine—beside the engine, and when asked later "if it was when they were even with the engine," replied "Yes, pretty near."   The driver of the team testified that there was no steam down around the wheels until he got about opposite the engine; that he didn't notice any until then.   The plaintiff testified that this burst of steam was just as they got up to the tender, and that the horse plunged right through it.   The length of the tender was twenty-five feet, and that of the engine and tender as coupled sixty-four feet.

The foreman of engineers testified in substance that the cylinder cocks are controlled from the cab; that their office is to relieve the cylinders of the water resulting from condensation; that when an engine stands even a short time steam condenses in the cylinders; that when an engine comes from the round-house the pipes are cold and there is much condensation; that it is necessary to leave the cocks open for a considerable time after starting to get rid of the water; that the discharge consists of water and steam, being nearly all water at first, containing afterwards a greater amount of steam, and

becoming all steam when the condensation is fully relieved; that the final change to an escape of steam only is ordinarily quite sudden. This testimony was uncontradicted.

We find nothing in the evidence that required a submission of the case. It was unquestionably the duty of the engineer to be looking ahead as he approached the crossing. There is no evidence tending to show that he did not see the team as soon as he could be expected to while performing this paramount duty. There is none tending to show that he did not stop the engine and the escape of steam as soon as possible after discovering the team. There is nothing that tends to show that the escape of steam which frightened the horse was outside the ordinary operation of an engine, or was unnecessary.

*Judgment affirmed.*